UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

THE MARK TRAVEL CORPORATION,
and TRANS GLOBAL LLC,

        Plaintiffs,

        v.                                  Case No. 09-CV-101

DR. GERHARD WALTER, In his capacity as the
Insolvency Administrator of the Estate of Aero Lloyd
Flugriesen Gmbh & Co Luftverkehrs-kg,

        Defendant.
_____

# ORDER

The central plaintiff in this action, The Mark Travel Corporation ("Mark Travel"), is a company that sells "leisure travel packages" to the public through its nearly twenty travel companies, including Funjet Vacations, in its self-proclaimed quest to "make vacation dreams a reality." The Mark Travel Corporation, About Us, http://www.marktravel.com/aboutus/index.asp (last visited Nov. 30, 2009). While Mark Travel is usually concerned with arranging "once in a lifetime" vacations to tropical islands in the Carribean or weekend adventures to Las Vegas, the plaintiffs' suit, an action for declaratory relief under 22 U.S.C. § 2201, has taken this court on a "trip" to some far less exotic locations, including the plaintiff's headquarters city of Milwaukee, Wisconsin, and the bustling Midwestern town of Wichita, Kansas, as this court contemplates the proper forum for this litigation. The defendant, a foreign attorney appointed by a German court to serve as the administrator of a German

charter airline, Aero Lloyd Flugriesen GmbH & Co Luftverkehrs-kg ("Aero Lloyd"), has moved to dismiss the complaint, arguing that the court lacks personal jurisdiction over the defendant. (Docket #14). In the alternative, Aero Lloyd contends that if the court can properly exercise in personam jurisdiction over the defendant that the court should dismiss or stay further proceedings in the action, deferring to a coercive action filed by the defendant against the plaintiff in the United States District Court for the District of Kansas. The court, having "traveled" through the relevant case law and the arguments presented by both parties, finds that this litigation has a proper "destination" in Kansas and will grant the defendant's motion.

**FACTUAL BACKGROUND**

Before discussing the legal merits of Aero Lloyd's motion, a brief discussion of the facts animating this dispute is warranted. The events underlying this suit began in June of 2002. On June 14, 2002, Mark Travel and co-plaintiff Trans Global Tours LLC ("Trans Global"), hoping to charter aircraft for the purposes of providing and selling domestic and global vacation packages, entered into an agreement ("2002-2003 Charter Agreement" or "First Charter Agreement") with Ryan International Airlines, Inc. ("Ryan"), an air carrier then-based in Wichita, Kansas, that primarily flies non-scheduled charter passenger services for tour packages. In the 2002-2003 Charter Agreement, Ryan promised to operate six aircraft chartered by Mark Travel and Trans Global in exchange for payment, which was to be deposited with an escrow agent at the Intrust Bank in Wichita, Kansas. The First Charter

-2-

Agreement contains a choice of law provision providing that the agreement be interpreted in accordance with the laws of the state of New York. Moreover, the agreement also requires that any "controversy between the parties arising out of or relating" to the contract be resolved through negotiation, mediation, and binding arbitration.

In conjunction with that agreement, the plaintiffs also executed a "Letter Agreement" with Aero Lloyd, a German corporation whose principle place of business was in Germany and was engaged in the business of "purchasing, owning, leasing, operating, and selling" aircraft. In the Letter Agreement, Aero Lloyd promised to lease six aircraft to Ryan[1] for the December 2002-2003 season, which, in turn, would be used by Ryan to fulfill their obligations under the 2002-2003 Charter Agreement.[2] The following month, Aero Lloyd and Ryan entered into aircraft lease agreements allowing the German corporation to lease Ryan six aircraft for a term of six months. Under the terms of the lease agreements, Aero Lloyd was required to deliver the aircraft to Ryan in Germany or Kansas.

The First Charter Agreement expired on April 30, 2003. However, in the fall of 2003, a series of agreements renewed the obligations of the four relevant parties.

---

[1] The Letter Agreement stated in the alternative that Aero Lloyd could lease six aircraft from another certificated United States Part 121 air carrier to fulfill its obligations under the agreement.

[2] The Letter Agreement also contained a specific clause absolving the German aircraft provider of any liability to the plaintiffs for any potential breaches by Ryan of its obligations under the first Charter Agreement. Moreover, the Letter Agreement required that Aero Lloyd deliver to Ryan, per the charter agreements, aircraft on a series of dates at several locations in the Midwest, including Milwaukee, Wisconsin. Finally, the Letter Agreement provided that Aero Lloyd would provide six aircraft to a certified air carrier for the December 2003-2004 season, which would, in turn, be available to Mark Travel to charter.

In September of 2003, the plaintiffs and Ryan agreed to a new charter agreement ("2003-2004 Charter Agreement" or "Second Charter Agreement") that mirrored the first agreement,[3] and in November and December of that year, Aero Lloyd and Ryan agreed to new aircraft lease agreements.[4] Aero Lloyd fully performed its obligations under all of the agreements. The Second Charter Agreement expired on April 30, 2004, leaving the only remaining performance obligations to be the payment of fees by Ryan to Aero Lloyd and by the plaintiffs to Ryan.

To provide for the obligations owed to Aero Lloyd by Ryan under various lease agreements including the ones related to the Mark Travel charter transaction, Aero Lloyd and Ryan executed an "Accord and Release" on February 16, 2005, whereby Ryan assigned to Aero Lloyd any claims[5] Ryan had against Mark Travel and Trans Global pursuant to the two charter agreements in turn for the release from any obligations that Ryan owed to Aero Lloyd. Finding that there were outstanding payments owed to Ryan pursuant to the two charter agreements, Aero Lloyd set out to collect from the plaintiffs what was owed.

---

[3] The Second Charter Agreement, like its predecessor, contains a choice of law provision providing that the agreement be interpreted in accordance with the laws of the state of New York. Moreover, the second contract also had a provision for binding arbitration in case of a dispute between the parties.

[4] It was around this period of time that Aero Lloyd underwent bankruptcy proceedings pursuant to laws of the Federal Republic of Germany. On October 16, 2003, Aero Lloyd filed for bankruptcy. Two months later, Aero Lloyd was judged bankrupt and has been under the administration of Dr. Gerhard Walter in his capacity as Insolvency Administrator of the Estate of Aero Lloyd ever since.

[5] Ryan states in the Accord and Release that it believes that no payment claims were due under either of the charter agreements by the plaintiffs. Moreover, the Accord and Release notes that Ryan did not pursue its claims in order to maintain its business relationship with the plaintiffs.

Four years and many letters later, on November 21, 2008, Aero Lloyd made a final formal demand that the dispute over the payment claims be referred for negotiation pursuant to the terms of the two charter agreements. As the charter agreements only allowed twenty-one days following a formal demand for negotiation for discussions between the two sides to occur, and because communications between the plaintiffs and Aero Lloyd were less than fruitful, the defendant asked Mark Travel for an agreement between the parties to toll the statute of limitations period to ease any time pressures as the parties attempted to reconcile their dispute before mandatory arbitration commenced. A series of emails and letters were exchanged between the parties, but nothing was resolved. Over two months after the initial demand letter, Mark Travel offered to enter into a tolling agreement upon the condition that if the parties were unable to resolve the dispute by negotiation or mediation, the matter would be litigated in this court's district.

The defendant spurned the plaintiffs' offer, instead opting to file an action in federal court in Kansas against Mark Travel and Trans Global on January 29, 2009, seeking to recover any outstanding payments, or, in the alternative, requesting the court enter an order compelling the plaintiffs to submit to arbitration. A day later, the plaintiffs filed a complaint against the defendant with this court asking for a declaratory judgment regarding the claims associated with the charter agreements. (Docket #1). On May 29, 2009, Aero Lloyd filed a motion to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to dismiss or stay the

proceedings in deference to the action in federal district court in Kansas. (Docket #14). The court now turns to a discussion of the merits of the motion.

## DISCUSSION

Before deciding whether the court has the power to adjudicate a claim regarding the defendant, the court will first decide whether exercising jurisdiction over the plaintiffs' declaratory judgment suit would be prudent. As a general rule, a federal suit may be dismissed for "reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993).[6] A district court has "an ample degree of discretion" in deferring to another federal proceeding involving the same parties and issue, as it is desirable for a single district court to resolve a suit for the sake of judicial economy. *Trippe Mfg. Co. v. American Power Conversion Corp.,* 46 F.3d 624, 629 (7th Cir. 1995).

A duplicative suit is one in which the "claims, parties, and available relief do not significantly differ between the two actions." *Serlin,* 3 F.3d at 223*.* Here, the parties do not dispute the fact that the plaintiffs' suit in this court is identical to the suit brought by the defendant in federal court in Kansas.

---

[6] The Seventh Circuit has stated that "when comity among tribunals justifies giving priority to a particular suit, the other action should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests." *Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co.,* 203 F.3d 442, 444 (7th Cir. 2000) (internal citations omitted). However, "outright dismissal" is "appropriate" when the "same party" is involved in all suits. *Id.* at 445; *see also Serlin,* 3 F.3d at 223. Here, for the reasons provided in this order, there is no reason why dismissal will adversely affect the plaintiffs' interest, and the court will proceed under the rule in *Serlin* that dismissal is the proper course of action for dealing with duplicative cases in the federal court system.

The court's analysis does not end here, however, as a case should not be dismissed for the mere fact that it is duplicative of another case. *Id.* at 224 (citing *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.,* 600 F.2d 1228 (7th Cir. 1979)). While the presumption is in favor of allowing the "first-filed suit" to proceed, the Seventh Circuit has noted that "no mechanical rule governs the handling of overlapping cases" and that a judge "may conclude that the [the second filed case] is a superior vehicle and may press forward." *Blair v. Equifax Check Servs.*, 181 F.3d 832, 838 (7th Cir. 1999). Before dismissing a suit because the case is duplicative, a district court must "consider any special factors counseling for . . . the exercise of jurisdiction in the case before him" or her. *Calvert Fire,* 600 F.2d at 1234. Among the factors guiding the court's analysis include: "(1) the desirability of avoiding piecemeal litigation, (2) the order in which jurisdiction was obtained by the concurrent forums, (3) the inconvenience of the [current] forum, and (4) the court first assuming jurisdiction over any property which may be involved in the suit." *Id.* Other courts have looked to the degree that dismissing an action will "unduly prejudice or tactically disadvantage the non-moving party," whether dismissing the case will "simplify the issues in question and streamline the trial," and whether dismissing the case will reduce the "burden of the litigation on the parties and on the court when deciding whether to dismiss a duplicative case." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). Guiding the court's overall inquiry will be "whether or not the declaratory relief sought will more fully serve the needs

and convenience of the parties and provide a comprehensive solution of the general conflict." *Tamari v. Bache & Co. (Lebanon) S. A. L.*, 565 F.2d 1194 (7th Cir. 1977).

Here, the court finds that dismissing the current action and deferring to the coercive suit brought in the federal court in Kansas is the wisest course of action. Several reasons propel the court's conclusion. First of all, the nature of this suit dictates that Kansas is the proper forum. Ultimately, this case is a contract dispute regarding whether the plaintiffs paid the proper amount of fees to Ryan as required by the charter agreements. The two contracts between Ryan and the plaintiffs mandated that payments be made to Intrust Bank in Wichita, Kansas, obligations which Mark Travel and Trans Global contend that they fulfilled. As such, non-party witnesses from the Kansas bank will likely be called to testify at trial regarding whether the plaintiffs fully paid the fees they were obligated to pay under the charter agreements, a task that is much more easily accomplished if trial occurs in Wichita. Moreover, the defendant has identified several ex-employees of Ryan currently residing in Wichita, Kansas, who would be central witnesses at any trial regarding the plaintiffs' fulfillment of their obligations under the contract. In contrast, the plaintiffs have failed to identify any non-party witnesses with personal knowledge of the facts at issue who would not be available for a trial in Kansas. While some of the relevant witnesses may be located in Wisconsin or Illinois,[7] the court is satisfied that the plaintiffs' choice of Kansas as the forum for the litigation is not wholly without

---

[7] The defendant has stated that they are willing to travel to Wisconsin to take depositions of the plaintiffs' employees, minimizing the burden on the plaintiff of having to litigate in Kansas.

logic, as nearly all of the relevant documentary evidence as well as the witnesses are located in Kansas.  In addition, Mark Travel concedes that their employees traveled to Wichita several times to review documents regarding the payments that were made pursuant to the charter agreements immediately following the drafting of the contracts, illustrating that a trial in Kansas would not inflict significant hardships for the plaintiffs.[8]  Finally, the court notes that the choice of law provisions in the charter agreements would require that whatever court adjudicates this dispute apply New York law, providing little reason to favor Wisconsin as the proper forum.

Second, the court notes that the general presumption of favoring a coercive action over a declaratory action counsels for dismissing this case.  Generally, the issuance of a declaratory judgment is discretionary.  *Tempco Electric Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746, 747 (7th Cir. 1987).  Moreover, a suit "aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way."  *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993).  Here, the natural

---

[8] The plaintiffs argue that because of Ryan's assignment of its rights under the charter agreements that Aero Lloyd has a contractual entitlement to access Ryan's witnesses and evidence, where as the plaintiffs do not have such benefits.  Moreover, the plaintiffs contend that most witnesses will be located at Ryan's current principal place of business in Rockford, Illinois, which is within the subpoena range of the Eastern District of Wisconsin, meaning that litigation in this forum will best allow the plaintiffs access to non-party witnesses. However, even if the Accord and Release provides Aero Lloyd with guaranteed access to Ryan's employees, a fact that remains uncertain to this court, there is no indication that Ryan is unwilling to cooperate with the plaintiffs, an assertion that is especially incredulous given Ryan's refusal to enforce its rights under the charter agreements for fear of ruining its relationship with Mark Travel. Additionally, the plaintiffs have not identified any of the witnesses who currently work for Ryan who are unwilling to testify at trial.

-9-

plaintiff is Aero Lloyd,[9] and the plaintiffs' declaratory action appears to be a mere attempt to try to control the choice of forum. The plaintiffs in this action provide no reason for why the declaratory action will somehow "clarify" or "settle the disputed legal relationships" at issue here or "afford relief from the uncertainty and controversy that created the [underlying] issues" any more so than the underlying coercive action would. *Cf. Tempco,* 819 F.2d at 749. The natural plaintiff is generally regarded as the "master of the complaint," and his or her choice[10] of where to bring suit carries the day absent any jurisdictional issues. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). Given the lack of jurisdictional problems with the action in Kansas, this court will, in its discretion, dismiss the declaratory action.

Finally, the fact that the federal court in Kansas has allowed the defendant's suit to proceed to the discovery stage further persuades this court to dismiss the plaintiffs' suit. Despite the plaintiffs' predictions to the contrary, the federal court in Kansas denied Mark Travel's motion to dismiss for lack of jurisdiction on November 17, 2009. (Kansas Docket #31). Two days later, the court ordered that the parties submit an updated planning report pursuant to Fed. R. Civ. P. 26(f) (Kansas Docket

---

[9] As the assignee of Ryan's rights under the charter agreements, the assignee is the "natural plaintiff" in a suit enforcing the rights obtained under the contract. *See, e.g., Murray v. Conseco, Inc.*, Case No. 03-cv-1701-LJM-VSS, 2004 U.S. Dist. LEXIS 6511, at *15 (S.D. Ind. Apr. 12, 2004) (vacated and remanded on other grounds).

[10] Although Aero Lloyd is not a resident of Kansas and even though courts "routinely give less weight to a foreign plaintiff's choice of forum," *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir. 1982), the mere fact that a plaintiff is not a resident of the forum in which he or she has brought suit does not mean that they have no say in the choice of forum.

#32), which the parties did on November 30, 2009. (Kansas Docket #33). Discovery is under way in the action in Kansas, and, regardless of the court's decision here, the plaintiffs will be forced to litigate in Wichita. Simultaneously continuing litigation in two forums will not promote judicial economy, efficiency, or the expeditious resolution of this case and can only risk piecemeal litigation. *See Day v. Union Mines, Inc.*, 862 F.2d 652, 659 (7th Cir. 1988) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results") (internal citations omitted). Dual proceedings will likely result in a "grand waste of efforts by both the court and parties in litigating the same issues regarding the same contract in two forums at once,"[11] and, as such, dismissal of the plaintiffs' complaint by this court is the best option. *Id.*

In sum, the facts that created the dispute, the nature of the conflict, and the fact that litigation will continue in federal court in Kansas regardless of this court's choice to proceed persuades this court to dismiss the action.[12] The law generally

---

[11] The plaintiffs argue that in "the unlikely event the Kansas court ultimately permits the litigation to proceed there, serious jurisdictional issues would haunt any judgment, injecting another layer of uncertainty." (Pl.'s Br. 17). Even though the "unlikely event" actually occurred, the court is not persuaded. Nothing in the Kansas court's opinion, which concluded that the court had personal jurisdiction over Mark Travel and Trans Global, appears to be legally askew. The court logically concluded that it could adjudicate a dispute over two defendants who had negotiated with a Kansas business a contract which required making payments in Kansas. The court is confident that no jurisdictional cloud will hang over the Kansas litigation.

[12] Accordingly, the issue regarding personal jurisdiction is moot and court need not take up the issue.

favors providing plaintiffs with their choice of forum, and there is no reason to deny the natural plaintiff its choice in this action.[13]

Accordingly,

**IT IS ORDERED** that the defendant's motion to dismiss the amended complaint (Docket #14) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss, stay proceedings, or compel arbitration (Docket #8) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that plaintiffs' motion to file "instanter the declaration of Jeremy P. Levinson nunc pro tunc" (Docket #19) be and the same is hereby **DENIED** as moot.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of December, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[13] The court notes that much of the briefing to this court is devoted to the question of who is to blame for the existence of duplicative federal suits. The question of whether the plaintiffs delayed the action to purposely run out a statute of limitations or whether the defendant dodged the plaintiffs to win a "race to the courthouse" is wholly irrelevant to the question of what is the proper choice of forum for this suit and, therefore, the court will not enter the morass of trying to resolve the tangential issue of how the two parties find themselves litigating the same issue in two federal courts at the same time.